FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 09 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALI AL-HAWWARI,

        Plaintiff,

v.

MICHAEL CHERTOFF, et al.,

        Defendants.

CIVIL ACTION

NO. 1:05-CV-1823-RLV

O R D E R

This is an action brought pursuant to 8 U.S.C. § 1329, 28 U.S.C. § 1331, and 28 U.S.C. § 1361, in which the plaintiff requests this court to issue a writ of mandamus to compel the defendants[1] to take action on his application for naturalization [Doc. No. 1]. Also pending before the court is the defendants' motion to dismiss [Doc. No. 5].[2]

---

[1] The defendants in this matter are Michael Chertoff, Security of Department of Homeland Security; Eduardo Aguirre, Director of the U.S. Citizenship and Immigration Services; Alberto Gonzales, U.S. Attorney General; and Rosemary Melville, Director of the Atlanta District Office of the U.S. Citizenship and Immigration Services.

[2] On November 2, 2005, the plaintiff filed a motion styled, "Motion for Withdrawal of Mandamus Complaint" [Doc. No. 4]. In this motion, the plaintiff stated, "The Mandamus action is no longer needed in that the U.S. Citizenship and Immigration Service completed processing of the Plaintiff's security check (i.e., name check), thereby removing the remaining legal impediment to the Naturalization process." The motion continued, "Plaintiff Ali Al-Hawwari will now seek to remedy inaction on his Naturalization

## I. Factual Background

The following facts are gleaned from the court's review of the record and the parties' submissions. The plaintiff, Ali Al-Hawwari, became a lawful permanent resident of the United State on or about November 15, 1993. On February 20, 2003, he applied for naturalization. Approximately two months after the application was filed, the plaintiff was fingerprinted at the Application Support Center of the U.S. Citizenship and Immigration Services ("CIS") in Atlanta, Georgia. On July 18, 2003, the plaintiff was interviewed by a CIS officer.

Subsequently, the plaintiff passed the English proficiency portion of the exam but failed to pass the civics portion. He then attended a "re-examination" of the civics portion of the exam on October 16, 2003, which he successfully passed. During his "re-examination" interview, a CIS officer told the plaintiff that the results of his "security check" had not yet been completed. At the conclusion of the plaintiff's second interview, the CIS officer told the plaintiff that he would have to wait until the results of his security check had been processed before she could approve his naturalization application and schedule him to be sworn in as a

---

Application through existing USCIS Atlanta procedures." On November 11, 2005, the defendants filed the current motion to dismiss [Doc. No. 5]. Considering the defendants' filing of the motion to dismiss and the petitioner's opposition to that motion, the court deems that the plaintiff's "Motion for Withdrawal of Mandamus Complaint" to be withdrawn [Doc. No. 4]. The clerk of the court is directed to terminate the motion.

2

U.S. citizen. Despite having been interviewed and fingerprinted in 2003 and fingerprinted again in 2005, the plaintiff has yet to receive notice that his application has been adjudicated.[3] Accordingly, he commenced this action seeking a writ of mandamus to compel the CIS to take action on his application.

In his complaint, the plaintiff has offered three separate statutory bases for the court's jurisdiction in this case: the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1329[4]; the

---

[3] In his response, the plaintiff made several factual assertions regarding conversations he had with government employees regarding the status of his application. Specifically, the plaintiff alleged, "Plaintiff's counsel received a phone call from District Adjudications Officer Lisa Bradley in late August in which she stated to Counsel that the Security checks have all been completed." In their reply brief, the defendants argue that because the plaintiff failed to support his factual allegations with appropriate citations such assertions should be stricken and ignored. The court agrees and did not consider the plaintiff's allegations in rendering this decision.

[4] 8 U.S.C. § 1329 states:

The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended. No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor. Nothing in this section shall be construed as providing jurisdiction

Administrative Procedure Act ("APA"), 5 U.S.C. § 704; and 28 U.S.C. § 1361. In their motion to dismiss, the defendants argue that this court lacks subject matter jurisdiction. Specifically, the defendants argue that CIS has not completed its "examination" of the plaintiff's application under 8 U.S.C. § 1446 and, therefore, this court's jurisdiction under 8 U.S.C. § 1447(b) is premature. Additionally, the defendants contend that CIS's actions with regard to plaintiff's application for naturalization are not subject to judicial review under the APA, 5 U.S.C. § 704,[5] and that the plaintiff has failed to state a claim under 28 U.S.C. § 1361.[6]

---

for suits against the United States or its agencies or officers.

[5] 5 U.S.C. § 704 states:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purpose of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

[6] 28 U.S.C. § 1361 states:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

4

## II. Legal Analysis

As a preliminary matter, this court must determine whether it has subject matter jurisdiction to hear the plaintiff's suit. As a general rule, the Attorney General has "the sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). However, an applicant for naturalization may apply to the district court for relief if the CIS fails to make a determination on his or her application "before the end of the 120-day period after the date on which the examination is conducted." 8 U.S.C. § 1447(b). The district court then has jurisdiction over the application to "determine the matter or remand the matter, with appropriate instructions, to the Service." Id. Therefore, whether this court has subject matter jurisdiction to hear this suit depends upon the meaning of the word "examination" as that term is used in 8 U.S.C. §§ 1446 and 1447(b).[7] Specifically, 8 U.S.C. §

---

[7] The plaintiff attempts to invoke the subject matter jurisdiction of this court by requesting a motion to compel and/or for other relief under the APA. Additionally, the plaintiff requests this court issue a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling the Service to take action on his application. In Danilov, the court found, "[T]hese additional jurisdictional sources are, at best general grants of subject matter jurisdiction, in sharp contrast to the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b)." Danilov v. Aguirre, 370 F.Supp.2d 441, 445 (E.D. Va. 2005). The Danilov court continued, "[i]t is well settled that general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction." Id. This court agrees. Therefore, the court confines its inquiry into whether the court has subject matter jurisdiction over the suit pursuant to 8 U.S.C. § 1447(b).

1447(b) states:

> If there is a failure to make a determination under section 1446 of this title *before the end of the 120-day period after the date on which the examination is conducted under such section*, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter. (emphasis added)

In this case, there is no dispute that more than 120-days have elapsed since the date a CIS officer last interviewed the plaintiff, in October 2003, without CIS's determination on the plaintiff's application. However, the parties disagree about the meaning of the word "examination" as used in 8 U.S.C. §§ 1446 and 1447(b). The plaintiff argues that "examination" refers to the date upon which the CIS officer interviews the applicant. Alternatively, the defendants argue that an "examination" under 8 U.S.C. § 1447(b) "includes more than the interview of the applicant by the examiner, and may not be conducted unless and until the Service receives the FBI's report of its criminal background check." The defendants' argument continues that since the FBI's background check has not been reported to CIS, the 120-day time period of 8 U.S.C. § 1447(b) has not elapsed and in fact has not started to run.

The court has been unable to find, and the parties have not submitted, any Eleventh Circuit precedent that directly controls

6

the issues presented by the defendants' motion. Thus, it would appear that whether the term "examination" refers to the date of the applicant's interview with CIS or whether it encompasses a entire process that must be completed before the 120-day clock begins, is a question of first impression in the Eleventh Circuit. Moreover, the court recognizes that other district courts outside of the Eleventh Circuit have reached differing results in their interpretation of the term "examination." See El-Daour v. Chertoff, No. Civ. A. 4-1911, 2005 WL 2106572, at *4 (W.D. Pa., Aug. 26, 2005)(holding that the term "examination" refers to the date the applicant is interviewed by a CIS officer).[8] Cf. Davilov, 370 F. Supp.2d 441 (holding that the term "examination" as used in 8 U.S.C. § 1446 does not refer to a single event, but to the entire process which ends in an interview.)

Without controlling precedent, the court consulted the applicable Regulations for guidance on the meaning of the term "examination" as it is used in 8 U.S.C. §§ 1446 and 1447(b). The Regulations contained in 8 C.F.R. §§ 335.1-5 provide CIS with the applicable guidelines for processing a naturalization application.

---

[8] In Sweilem v. U.S. Citizenship and Immigration Services, No. Civ. 5-125, 2005 WL 1123582, *5 (N.D. Ohio, May 10, 2005), the court found that it possessed subject matter jurisdiction pursuant to 8 U.S.C. § 1447(b) over an applicant's suit where an applicant had an interview conducted by an immigration officer but was awaiting the results of his background check. See also Castracani v. Chertoff, 377 F.Supp.2d 71, 75 (D.D.C. 2005); Essa v. United States Citizenship and Immigration Services, No. Civ. 5-1449, 2005 WL 3440827 (D. Minn., Dec. 14, 2005.)

With regard to the applicant's background investigation, 8 C.F.R. § 335.1 states:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application. The district director may waive the neighborhood investigation of the applicant provided for in this paragraph.

With regard to the timing of an "examination", 8 C.F.R. § 335.2(b) requires CIS to

> notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed."(emphasis added).

Considering how the term "examination" is used in 8 C.F.R. § 335.2, "examination" can only be understood as equating with the interview conducted by a Service officer. Further support for the proposition that the term "examination" refers to an interview is provided by the use of the term in 8 C.F.R. § 335.3(b) which states:

> (b) Rather than make a determination on the application, the Service officer may continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination. The officer must inform the applicant in writing of the grounds to be overcome or the evidence to be submitted. The applicant shall not be required to appear for a reexamination earlier than 60 days after the first

8

examination. However, the reexamination on the continued case shall be scheduled within the 120-day period after the initial examination, except as otherwise provided under § 312.5(b) of this chapter. If the applicant is unable to overcome the deficiencies in the application, the application shall be denied pursuant to § 336.1 of this chapter.

Lastly, support for the proposition that the term "examination" refers to an interview conducted by a CIS officer is contained in 8 C.F.R. § 312.5(b), which states in pertinent part:

> Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the application must agree in writing to waive the requirement under section 336 of the Act that the Service must render a determination on the application within 120 days from the initial interview, and instead permit the Service to render a decision within 120 days from the second interview.

The defendants argue that the term "examination" contained in 8 U.S.C. § 1447(b) refers to the entire process--not simply the initial interview, or initial "examination." The defendants' argument continues, "Unlike the term initial interview that is contained in the regulation, the term 'examination' contained in § 1447(b) refers to the entire process the agency follows to gather information concerning the applicant." Moreover, the defendants argue that this court should adopt the interpretation of the term "examination" as set forth in Danilov, i.e., that "examination refers to the entire process rather than the interview. However, because of the way the term "examination" is used in the Regulations, the court rejects the defendants' arguments and the

9

holding of Danilov.

Strictly construing the Regulations, the court concludes that the term "examination" equates with the "interview" or "interviews" conducted by a CIS officer. The Regulations and the persuasive authority and analysis contained in El-Daour supports this interpretation. The court concludes that an investigation under 8 C.F.R. § 335.1 and the interview of 8 C.F.R. § 335.2 are distinct, separate things. In fact, 8 C.F.R. § 335.2(b) states that the full criminal background check must be completed *before the examination* is conducted, not as the defendants contend that the investigation must be conducted before the examination can be completed.[9]

In this case, it is undisputed that the plaintiff's last interview with the CIS occurred in October 2003 and CIS has yet to provide the plaintiff with a determination on his naturalization application. Considering these facts, the court concludes that it has subject matter jurisdiction over the plaintiff's application pursuant to 8 U.S.C. § 1447(b).

While the court concludes it has subject matter jurisdiction,

---

[9] The court also placed great significance on the fact that 8 U.S.C. § 1447(b) states, "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter" (emphasis added). The court found that there was only one plausible interpretation of the above statute. The term "examination" refers to a distinctive date of a particular event, like the date of an interview.

10

the court finds itself unable to adjudicate the plaintiff's application for naturalization for the same reason CIS has been precluded from making a final decision, i.e., the plaintiff's FBI background check has yet to be completed. The defendants argue that although CIS should have waited to conduct the initial interview until after it received all of the necessary information from the FBI, the undisputed facts demonstrate that the FBI background check had not been completed at the time the plaintiff filed his complaint. The defendants contend that because the plaintiff's FBI background check had not been completed at the time the plaintiff filed this lawsuit, CIS had no authority to adjudicate his naturalization application. On this point, the court agrees. Since 1997, Congress has required that a complete FBI criminal background investigation be conducted on each applicant for citizenship. See Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act, Pub. L. 105-119, tit. I, 111 Stat. 2440, 2448-49 (1997). Consequently, the court concludes that the FBI background check is a vital piece of the information that both this court and CIS need to make a determination on the plaintiff's naturalization application. While the court is aware that the plaintiff is justifiably frustrated by the more than two-year delay of the adjudication of his naturalization application, the court, like the CIS, is currently unable to adjudicate the plaintiff's application

11

without the appropriate FBI background check results. For these reasons, a remand to CIS is warranted pursuant to 8 U.S.C. § 1447(b), with instructions that CIS expeditiously reach a determination on the plaintiff's application upon the FBI's completion of the plaintiff's background check.[10]

### III. Conclusion

For the above reasons, the defendants' motion to dismiss based on this court's lack of subject matter is DENIED [Doc. No. 5].

---

[10] While the court is cognizant of the security realties in a post-9/11 world cited by the defendants and the complexity of background checks, the court concludes that CIS could have avoided this whole procedural predicament and the plaintiff's suit, if CIS had simply followed its own policies and procedures. 8 C.F.R. § 335.2(b) requires the agency to wait until the FBI check is completed prior to notifying an applicant to appear for his initial examination. In this case, 8 C.F.R. § 335.2(b) was not followed. Non-compliance with this Regulation resulted in both a waste of time and judicial resources and justifiably confused the plaintiff as to the status of his naturalization application.

In their motion to dismiss, the defendants argue that the plaintiff "seeks, in effect, a judicial order that will put him at the head of the queue, and move all others back one space." In response, the plaintiff argues that this allegation is without merit because "the allegation pre-supposes that the Immigration service maintains an orderly and efficient case processing system, i.e. a 'first in, first out' procedure." Furthermore, the plaintiff contends that the Service is grossly inconsistent in case processing, that no mechanism exists to determine where a case falls in line, and that "filing a civil action against the Service is the only remedy available when all other methods of trying to resolve long delays are ineffective." Having considered the parties arguments, the court finds no reason why a determination on the plaintiff's naturalization application cannot be expeditiously rendered by CIS. Furthermore, the court concludes that it has authority pursuant to 8 U.S.C. § 1447(b) to instruct CIS to expedite the plaintiff's application.

Pursuant to 8 U.S.C. § 1447(b), the plaintiff's compliant for writ of mandamus is REMANDED to CIS for prompt resolution of the plaintiff's application for naturalization [Doc. No. 1]. The plaintiff's "Motion For Withdrawal of Mandamus Complaint" is deemed WITHDRAWN [Doc. No. 4].

To insure that the plaintiff's naturalization application is expeditiously processed by CIS, the parties are directed to provide the court with a joint status report of the plaintiff's naturalization application within 90-days from the date of this order. In the event a determination is not rendered within 90-days of this order, the court will consider other remedies.

SO ORDERED, this 9TH day of January, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge